

09/02/2009

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SHARON PEACE YOUNG, | § | Case No. 08-41515 |
| | § | (Chapter 13) |
| Debtor. | § | |

## MEMORANDUM OPINION

The Court entered an order confirming the Chapter 13 reorganization plan filed by Sharon Peace Young (the "Debtor") on November 7, 2008. Less than ten days later, on November 14, 2008, Eric. D. Fein, P.C. & Associates (the "Creditor") filed a Motion to Reconsider Confirmation of Plan (the "Motion"). In the Motion, as amended, the Creditor seeks an order vacating the confirmation order or requiring the Debtor to amend her confirmed plan. In addition, on December 4, 2008, the Creditor filed an objection to the Debtor's claimed exemption of certain property that the Debtor failed to disclose prior to confirmation of her plan. Following a hearing on the Motion and the Creditor's objection to the Debtor's claimed exemption, the Court took the matter under advisement.

## JURISDICTION

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §157 and 1334. The Court has the authority to enter a final order in this contested matter because it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (L), and (O). The following constitutes the Court's findings of fact and conclusions of law.[1]

---

[1] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. Likewise, to the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such.

## RELEVANT BACKGROUND

Prior to bankruptcy, the Debtor retained the Creditor as counsel in a divorce proceeding. The Creditor subsequently sued the Debtor in state court for unpaid fees relating to his representation of the Debtor. The Creditor obtained a default judgment against the Debtor on May 9, 2008 in the total amount of $183,403.08 plus post-judgment interest at the rate of 6% per annum, consisting of $42,538.90 in actual damages, $7,545.05 in pre-judgment interest, and $133,419.13 in attorney's fees. The Creditor abstracted the default judgment and placed liens upon the Debtor's real and personal property.

The Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code on June 13, 2008 (the "Petition Date"). The Debtor filed her original bankruptcy schedules on the same date as well as a proposed plan of reorganization. The Debtor listed the Creditor in her bankruptcy schedules as a secured creditor with a judgment lien against her real and personal property, and she proposed to void the Creditor's lien in her proposed plan of reorganization pursuant to § 522(f) of the Bankruptcy Code.[2]

A meeting of the Debtor's creditors was held and concluded on September 19, 2008, pursuant to §341 of the Bankruptcy Code. The Creditor appeared at that meeting and questioned the Debtor. The Creditor scheduled a further examination of the Debtor pursuant to Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 2004. The examination was originally scheduled to occur on October 27, 2008, but was cancelled by counsel for the Creditor due to a family emergency. The Creditor rescheduled the

---

[2] Section 522(f)(1)(A) of the Bankruptcy Code permits avoidance of a "judicial lien" on a debtor's interest in real or personal property to the extent the lien impairs a valid exemption. A "judicial lien" is defined as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. §101(36). Lien avoidance pursuant to §522(f) does not require the initiation of a formal adversary proceeding. *See* FED. R. BANKR. P. 4003(d).

examination for November 12, 2008, but this examination was cancelled by the Debtor due to a medical procedure she underwent shortly before the scheduled examination. Counsel for the Debtor, however, forwarded the Creditor the documents the Creditor had requested in connection with the examination.

In the meantime, a hearing on confirmation of the Debtor's proposed plan was scheduled to be conducted on September 10, 2008. The hearing was continued to November 5, 2008. The Creditor failed to file a timely proof of claim, object to confirmation, or appear at the confirmation hearing. The Court entered an order confirming the Debtor's reorganization plan on November 7, 2008. The Debtor's general unsecured creditors will receive a pro rata share of $11,631 under her confirmed plan, and the Debtor estimates that her total general unsecured debt is $228,806.35. This figure includes the Creditor's claim, which becomes unsecured under the terms of the plan, in the total amount of $183,503.08.

Within 10 days of the entry of the confirmation order, the Creditor filed the instant Motion. The Creditor filed a separate request for leave to file a late proof of claim.[3] No party in interest objected to the Creditor's request to file a late proof of claim, and the Court entered an order granting the request on December 10, 2008.

On November 14, 2008, the Debtor filed several amended bankruptcy schedules. In her amended Schedule B – Personal Property, the Debtor disclosed an interest in her ex-husband's pension account valued at $54,648.63.[4] In her amended Schedule C –

---

[3] Except in Chapter 11 cases, in which certain scheduled claims are "deemed filed," *see* 11 U.S.C. §1111(a) and FED. R. BANKR. P. 3003(b)(1), a creditor desiring to receive distributions in a bankruptcy case must file a timely proof of claim. *See* 11 U.S.C. §501(a); FED. R. BANKR. P. 3002(a).

[4] A debtor may amend her schedules at any time before the case is closed. *See* FED. R. BANKR. P. 1009(a) ("A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed."). Any party in interest may object to a debtor's exemption

3

Property Claimed as Exempt, the Debtor claimed her interest in the pension account as her exempt property pursuant to § 522(d)(10)(E) of the Bankruptcy Code. The Creditor filed an objection to the Debtor's claimed exemption of her interest in her ex-husband's pension account within 30 days of the Debtor's amendment of her bankruptcy schedules.

The Debtor's interest in her ex-husband's pension account arises from a Qualified Domestic Relations Order ("QDRO") entered in her divorce proceeding. In the Debtor's pre-bankruptcy divorce proceeding, the Debtor entered into a Mediated Settlement Agreement with her former husband on May 5, 2005. The state court signed the Agreed Final Decree of Divorce and the QDRO on September 27, 2005. Paragraph 10 of the QDRO divides the pension account belonging to the Debtor's ex-husband as follows:

> This order awards, assigns, and grants to Alternate Payee an amount equal to fifty (50) percent (%) of Participant's accrued benefit under the Plan as of June 30, 2005 after deducting Participant's Separate Property in the amount of $53,702.74. *This award is to be paid in a single, lump-sum payment to the Alternate Payee immediately upon presentment of this Order to the Plan Administrator* as designated by the Alternate Payee.

(Emphasis added.) Paragraph 11 of the QDRO describes the commencement date and form of payment as follows:

> Alternate Payee shall commence Alternate Payee's share of the benefits effective upon the date the Final Decree and this Order are signed by the Court. At that time, a certified copy of this QDRO shall be forwarded to the Plan for immediate distribution of the benefits due to the Alternate Payee to the designated broker *in the form to be determined by the Alternate Payee*. Alternate Payee will provide appropriate papers to designate distribution of Alternate Payee's accrued benefit under the Plan.

(Emphasis added.) Although these provisions of the QDRO appear to contemplate an immediate payment to the Debtor, there is no dispute that a certified copy of the QDRO

---

claims within 30 days after the conclusion of the meeting of creditors or within 30 days of any amendment to the debtor's claimed exemptions, whichever is later. *See* FED. R. BANKR. P. 4003(b).

4

has not been presented to the Plan Administrator, and the Debtor has not received any payment of her accrued benefits.[5]

The QDRO was not signed or acknowledged by the Debtor, who claims she first became aware that the divorce court had entered the QDRO when she was preparing for the Creditor's examination of her. According to the Creditor, the Debtor was aware of the QDRO prior to filing her bankruptcy petition, but she chose not to withdraw the funds from the QDRO (or to disclose the QDRO to her creditors in her original bankruptcy schedules) as part of an effort to avoid paying the Creditor's fees.[6] The Creditor also complains that the Debtor failed to disclose in her bankruptcy schedules a payment of $28,000 that she received from her husband in connection with the divorce. However, the Debtor testified, credibly, that she used these funds to pay living expenses and that she was not required to disclose their receipt since they were received more than two years prior to her bankruptcy.[7]

---

[5] The creditor asserts in its post-hearing brief that the plan administrator "pre-qualified" the QDRO as satisfying the statutory requirements of ERISA. "Because QDROs serve to implement the distribution of retirement accounts associated with ERISA qualified plans that are subject to administration by someone other than the parties, they are frequently submitted to the plan's administrator for approval following the entry of the divorce judgment, but prior to the approval and entry of the QDRO by the court." *Jed-Harbage v. Harbage,* 825 A.2d 348 (Maine 2003) (citation omitted). Based on its assertion that the QDRO in this case was pre-qualified by the plan administrator, the Creditor asserts that ERISA requires the Plan Administrator to distribute the funds to the Debtor pursuant to the QDRO. The Creditor, however, has not provided any authority that would support the Creditor's legal assumption that the "pre-qualification" of an unsigned draft of a QDRO is equivalent to presenting a QDRO that has been signed and entered by a state court to a plan administrator for distribution.

[6] Regardless of whether the Creditor obtained the QDRO at the request of the Debtor or in violation of her wishes, the QDRO has been entered by the state court. The Debtor did not present any evidence or argue that she has sought to vacate the QDRO.

[7] In addition to schedules detailing their assets, liabilities and expenses, debtors are required to file a statement of their financial affairs prepared as prescribed by the appropriate Official Forms." FED. R. BANKR.P. 1007(a). *See also* 11 U.S.C. §521(a)(1)(B)(iii). Question number 2 in Official Form 7 (the Statement of Financial Affairs) requests the following information: "State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the two years immediately preceding the commencement of the case."

## ANALYSIS

### A. The Creditor's Rule 59(e) Motion

Because the Creditor filed the Motion less than ten days after the entry of the confirmation order, it is deemed a motion under Federal Rule of Civil Procedure ("Rule") 59(e), as adopted and applied to this case by Bankruptcy Rule 9023. *See Shepherd v. Int'l Paper Co.,* 372 F.3d 326, 327 n. 1 (5th Cir. 2004); *Harcon Barge Co. v. D & G Boat Rentals, Inc.,* 784 F.2d 665, 667 (5th Cir. 1986) (en banc). Motions to alter or amend a judgment under Rule 59(e) "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989) (citations omitted). Altering, amending, or reconsidering a judgment is an extraordinary measure, which courts should use sparingly. *See, e.g., Southern Constructors Group, Inc. v. Dynalectric, Corp.*, 2 F.3d 606, 611 (5th Cir. 1993) (noting that the standards applicable to Rule 59(e) favor the denial of motions to alter or amend a judgment). A Rule 59(e) motion should not be granted unless there is: (1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice. *See, e.g., Schiller v. Physicians Resource Group, Inc*., 342 F.3d 563, 567 (5th Cir. 2003); *Russ v. Int'l Paper Co.,* 943 F.2d 589, 593 (5th Cir. 1991).

Here, the Creditor failed to file any objection to confirmation and failed to appear at the hearing on confirmation. There is no dispute that the Creditor received proper notice of the confirmation hearing. The Creditor and his counsel apparently failed to recognize its importance. At the hearing on the Motion, counsel for the Creditor represented that he failed to appear at the confirmation hearing because he was out of

town on another matter.

The Creditor's Motion seeking to vacate the confirmation order is primarily based on the Debtor's failure to disclose her interest in her ex-husband's pension account -- an interest of which the Creditor was well aware. The Creditor also challenges the Debtor's good faith in filing her petition and her proposed plan of reorganization. *See* 11 U.S.C. §1325(a)(3) and (7). Since the Motion is not based on new evidence or a change in controlling law, the Court construes the Creditor's Motion as requesting the Court to vacate the confirmation order in order to prevent the Debtor from working a "manifest injustice" on her creditors.

Rulings of bankruptcy courts are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure. *See In re Von Volkmar*, 218 B.R. 890 (Bankr. N.D. Ill. 1998). The Creditor could have but did not bring the present dispute to the Court's attention prior to the confirmation hearing or even request a continuance of the confirmation hearing to permit further discovery, if necessary.[8] In the context of a motion under Rule 59(e), a "manifest injustice" does not exist "where, as here, a party could easily have avoided the outcome, but instead elected not to act until after a final order had been entered." *Lightfoot v. District of Columbia,* 355 F.Supp.2d 414, 422 (D. D.C. 2005) (citation omitted). It is well settled that a Rule 59(e) motion

---

[8] In one of its pre-hearing legal briefs, the Creditor challenges the dischargeability of the Debtor's obligations to it pursuant to §523(a)(5), (a)(2), (a)(6) and (a)(15). However, an objection to dischargeability requires the filing of an adversary complaint, and an adversary complaint objecting to dischargeability under §523(a)(2), (4) or (6) of the Bankruptcy Code must be made prior to the running of the deadlines set forth in the Bankruptcy Rules. *See* 11 U.S.C. §523(c); FED. R. BANKR. P. 4007 and 7001. With respect to the nondischargeability of the Debtor's obligation to the Creditor under §523(a)(5) or (a)(15), (a)(5), the Creditor's claim in this case is not based on a fee award granted pursuant to a divorce decree, but a default judgment obtained by the Creditor against the Debtor. *See, e.g., In re Brooks*, 371 B.R. 761 (Bankr. N.D. Tex. 2007) (holding that law firm may not assert a claim for non-dischargeable attorneys' fees as either a "domestic support obligation" under §523(a)(5), or a divorce-related debt under §523(a)(15)).

7

"cannot be used to raise new arguments which could, and should, have been made before the judgment issued." *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) (citing *Federal Deposit Insurance Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986)). The Court concludes that, under the circumstances of this case, the Creditor has failed to establish grounds for relief from the confirmation order under Rule 59(e).

### B. The Exclusion or Exemption of the QDRO

The Court now turns to the Debtor's claimed exemption of her recently-disclosed interest in her ex-husband's pension plan. As a threshold matter, the parties dispute whether the Debtor's interest in her ex-husband's pension plan is protected by ERISA and excluded from the estate by §541(c)(2) or whether the interest is "property of the estate" under §541(a)(1) of the Bankruptcy Code. If the Debtor's interest is property of the estate, the parties dispute whether the Debtor may exempt that interest from her creditors pursuant to §522(d)(10)(E) of the Bankruptcy Code.

Upon the filing of a bankruptcy petition, an estate is created which includes all legal and equitable rights of the debtor as well as those interests recovered or recoverable through transfer and lien avoidance provisions. *See* 11 U.S.C. §541(a)(1). The Bankruptcy Code, however, excludes from the bankruptcy estate property of the debtor that is subject to a restriction on transfer enforceable under "applicable nonbankruptcy law." 11 U.S.C. § 541(c)(2); *Patterson v. Shumate,* 504 U.S. 753, 755 (1992) (overruling *In re Dyke*, 943 F.2d 1435 (5th Cir. 1991) (holding that ERISA anti-alienation provision does not constitute "applicable non-bankruptcy law")). "The anti-alienation provision required for ERISA qualification ... constitutes an enforceable transfer restriction for purposes of §541(c)(2)'s exclusion of property from the bankruptcy estate." *Patterson,*

8

504 U.S. at 760. Thus, "a debtor's interest in an ERISA-qualified pension plan may be excluded from the property of the bankruptcy estate pursuant to §541(c)(2)." *Id.* at 765.

A QDRO is a type of domestic relations order that "creates or recognizes an alternate payee's right to, or assigns to an alternate payee the right to, a portion of the benefits payable with respect to a participant under a plan." 29 U.S.C. §1056(d)(3)(B)(i). A domestic relations order, in turn, is any judgment, decree, or order that concerns "the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant" and is "made pursuant to a State domestic relations law (including a community property law)." 29 U.S.C. §1056(d)(3)(B)(ii). A QDRO, in contrast to other domestic relations orders, assigns a spouse a right in an ex-spouse's pension through exceptions from both the pension plan anti-alienation provision, 29 U.S.C. §056(d)(3)(A), and ERISA's general pre-emption clause, 29 U.S.C. § 1144(b)(7). A spouse's undistributed interest in an ERISA-qualified pension plan under a QDRO, however, is subject to these restrictions: "In creating the QDRO mechanism Congress was careful to provide that the alternate payee ... is to be considered a plan beneficiary." *See Boggs v. Boggs,* 520 U.S. 833, 847 (1997) (citing 29 U.S.C. §§ 1056(d)(3)(K), (J)).[9]

The present case involves a "separate interest" QDRO, which divides the actual pension by providing for a lump sum distribution to the Debtor. *See Samaroo v. Samaroo,* 193 F.3d 185, 188 n. 2 (3rd Cir. 1999). *See also* Cynthia A. Samuel &

---

[9] Under ERISA, "[a] person who is an alternate payee under a qualified domestic relations order shall be considered for purposes of any provision of this chapter a beneficiary under the plan." 29 U.S.C. §1056(d)(3)(J). ERISA defines "alternate payee" to mean "any spouse, former spouse, child, or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant." 29 U.S.C. §1056(d)(3)(K).

9

Katherine S. Spaht, *Fixing What's Broke: Amending ERISA to Allow Community Property to Apply upon the Death of a Participant's Spouse,* 35 FAM. L.Q. 425, 440-41 (2001). A "lump sum distribution" is defined in the Internal Revenue Code as a distribution to an employee or former spouse under a QDRO that meets special rules which allow the distribution to avoid tax recognition or to be taxed at favorable rates. *See* 26 U.S.C. §402(e)(4)(D). Although the funds are no longer protected from creditors by the ERISA-qualified plan following such distribution, an individual receiving a lump sum distribution from a former spouse's pension plan pursuant to a QDRO may, in some circumstances, elect to place all of the funds in another qualified plan or annuity. *See* 26 U.S.C. §408(d)(3). The Internal Revenue Code encourages such rollovers by making them nontaxable. *See* 26 U.S.C. §§ 402(c)(1), 403(b)(8), and 457(e)(16). In addition, the Supreme Court recently held that an individual retirement account (IRA) consisting of a rollover from a qualified plan is exempt from the bankruptcy estate under §522(d)(10)(E) of the Bankruptcy Code. *See Rousey v. Jacoway*, 544 U.S. 320 (2005).

As the Creditor points out in its post-hearing brief, many courts which have addressed the question have found that a QDRO creates a property interest in the pension plan separate and distinct from the interest of the plan participant, rather than creating a mere claim. *In re Wilson,* 158 B.R. 709 (Bankr. S.D. Ohio 1993); *In re Debolt,* 177 B.R. 31, 36 (Bankr. W.D. Pa. 1994); *In re Brown,* 168 B.R. 331, 334-335 (Bankr. N.D. Ill. 1994); *Brown v. Pitzer (In re Brown),* 249 B.R. 303, 308-310 (S.D. Ind. 2000). In *In re Johnston*, 218 B.R. 813 (Bankr. E.D. Va. 1998), the bankruptcy court held that a debtor's interest in a plan, acquired pursuant to a QDRO, is property of the estate if the funds are available for distribution as of the petition date, even if they have not yet been

distributed.  *See also In re Hageman,* 260 B.R. 852, 957 (Bankr. S.D. Ohio 2001) (following *Johnston*).  Most courts, however, have reached the opposite conclusion based on the plain language of ERISA and have held that a debtor's interest in undistributed funds does not become property of the bankruptcy estate.  *See In re Nelson,* 322 F.3d 541, 544 (8th Cir. 2003) (rejecting *Johnston* and *Hageman* and holding that held that because the lump-sum distribution owed debtor from the retirement plan was still held in trust by the plan on the petition date, the funds were subject to ERISA's anti-alienation provision and were excludable from the bankruptcy estate, even though debtor obtained his interest through a QDRO rather than directly from the plan); *In re Hthiy,* 283 B.R. 447, 451 (Bankr .E.D. Mich. 2002) (concluding that the debtor held a separate property interest in her former husband's ERISA-qualified plan which is excluded under § 541(c)(2)); *In re Latta*, 189 B.R. 222 (N.D. Ga. 1995) (holding that debtor's undisbursed interest in plans was not property of the estate); *In re Abbata,* 157 B.R. 201 (Bankr. N.D. N.Y. 1993) (denying objection to debtor's exemption of her undisbursed interest in her former husband's retirement plan under a QDRO).  *See also Travelers Ins. Companies v. Fountain City Federal Credit Union*, 889 F.2d 264, 266 (11th Cir. 1989) (ERISA's anti-alienation provisions continue to apply until interests of participant are distributed, even though participant entitled to receive lump-sum distribution from terminating plan); *Tenneco Inc. v. First Virginia Bank of Tidewater*, 698 F.2d 688 (4th Cir. 1983) (ERISA continues to protect funds even if they are constructively received by employee because available to be paid out at any time).

The relevant moment for determining whether a property interest is included in the bankruptcy estate is "as of the commencement of the case."  11 U.S.C. §541(a)(1).

11

On the Petition Date in this case, the Debtor had not yet presented the QDRO to the administrator for her ex-husband's pension plan, and her interest in that plan had not yet been distributed to her. The Debtor, as the alternate payee under the QDRO, had beneficiary status at the time she filed for bankruptcy. *See* 29 U.S.C. §§ 1056(d)(3)(K), (J). "It logically follows that funds still held in trust are subject to ERISA's anti-alienation provision and therefore excludable from the bankruptcy estate under §541(c)(2)." *In re Nelson*, 322 F.3d at 544. "Furthermore, §541(c)(2) specifically refers to the 'beneficial interest of the debtor in a trust' and therefore applies both to a beneficiary's interest in an ERISA plan as well as a plan participant's interest in the plan." *Id.*

The Creditor contends that the Court should interpret the QDRO as a transfer to the Debtor, because the QDRO is not subject to ERISA's anti-alienation provisions. The Creditor argues that, under Texas law, the Debtor's entitlement to the cash payment from the pension plan would be reachable to satisfy the Creditor's judgment lien. However, Texas Property Code § 42.0021(d), which the Creditor cites as support for its argument, addresses the use of a pension plan as security for a voluntary loan from the plan and has no application to this case.[10] *See also* 29 U.S.C. §1144(a) ("[T]he provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws

---

[10] Texas Property Code § 42.021(d) provides as follows:

> A participant or beneficiary of a stock bonus, pension, profit-sharing, retirement plan, or government plan is not prohibited from granting a valid and enforceable security interest in the participant's or beneficiary's right to the assets held in or to receive payments under the plan *to secure a loan to the participant or beneficiary from the plan*, and the right to the assets held in or to receive payments from the plan is subject to attachment, execution, and seizure for the satisfaction of the security interest or lien granted by the participant or beneficiary to secure the loan.

(Emphasis added.)

insofar as they may now or hereafter relate to any employee benefit plan described ….).

Moreover, the Eighth Circuit expressly rejected a similar argument in *Nelson*, as follows:

> Shieffer contends ERISA's anti-alienation provision does not apply to an interest acquired through a QDRO because that type of transfer is one of two exceptions to the anti-alienation provision. Schieffer reads this provision out of context. The transfer of funds from Denise's retirement plan to Ronal was accomplished pursuant to a QDRO, and therefore not subject to ERISA's anti-alienation provision. That is not the transfer at issue. The relevant transfer is that between Ronald and his creditors via the bankruptcy estate. That transfer, if allowed to take place, would not be accomplished pursuant to a QDRO, and is therefore subject to ERISA's anti-alienation provision.

*In re Nelson*, 322 F.3d at 546-47. *See also Boggs v. Boggs*, 520 U.S. at 846-47 (generally recognizing that QDROs confer beneficiary status upon certain nonparticipants and give those persons the same protection under ERISA as plan participants).

The Court is unable to find a provision in ERISA (and the parties do not point to any provision) that sets a deadline for the Debtor to present the QDRO to the plan administrator.[11] Rather, the statutory scheme suggests the absence of such a deadline. *See Marker v. Northrop Grumman Space & Missions Systems Corp. Salaried Pension Plan*, 2006 WL 2873191 at *8 (N.D. Ill. Oct. 4, 2006) (unpublished) (concluding that ERISA does not contain a deadline for submitting QDROs). ERISA contains provisions that require a plan to segregate the benefits that would have been payable to the alternate payee "during any period in which the issue of whether a domestic relations order is a qualified domestic relations order is being determined (by the plan administrator, by a court of competent jurisdiction, or otherwise." 29 U.S.C. §1056(d)(3)(H)(i). ERISA states that if it is determined within the "18-month period" that the order is a QDRO, then

---

[11] Paragraph 11 of the QDRO in this case provides that, "upon the date the Final Decree and this Order are signed by the Court … a certificate copy of this QDRO shall be forwarded to the Plan …." To the extent this imposes a deadline upon the Debtor, it does not appear that the deadline has been enforced.

the segregated money is paid to the alternate payee. 29 U.S.C. §1056(d)(3)(H)(ii). If it is determined that the order is a QDRO or if the issue is unresolved, then the plan pays the segregated amount to the person who would have been entitled to the amount absent the order. *See* 29 U.S.C. §1056(d)(3)(H)(iii). Under ERISA, the 18-month period begins "with the date on which the first payment would be required to be made under the domestic relations order." 29 U.S.C. §1056(d)(3)(H)(v). If the determination that an order is a QDRO is not made until after the 18-month period has ended, the benefits are applied "prospectively" only. 29 U.S.C. §1056(d)(3)(H)(iv). Thus, it appears that the only penalty for delayed submission of a QDRO is that "the alternate payee runs the risk of receiving benefits only prospectively." *Marker*, 2006 WL 2873191 at *8.

## CONCLUSION

For the foregoing reasons, the Court concludes that the Creditor has failed to establish grounds for relief from the confirmation order under Rule 59(e). The Court further concludes that the Creditor's objection to the Debtor's claimed exemption of her interest in her ex-husband's pension account should be overruled inasmuch as this interest is not property of her bankruptcy estate. The Court will enter a separate Order consistent with this Memorandum Opinion.

Signed on 09/02/2009

*Brenda T. Rhoades*     MD
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE